Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

Billy Wayne ALEXANDER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–433.

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1976.

OPINION

BLISS, Judge:

The Appellant, Billy Wayne Alexander, hereinafter referred to as defendant was charged, tried before a jury and convicted in the District Court, Lincoln County, Oklahoma, Case No. CRF–74–91, of the crime of Burglary in the Second Degree. Punishment was assessed at a term of four (4) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial was as follows: Ronald Jones, the owner of an insurance and television business in Meeker, testified that on the morning of September 19, 1974, he opened up his store, put on the coffee and then locked back up to go to the post office. In about 10 minutes he returned and noticed that 3 television sets had been stolen. An inspection of the back of the building revealed that a window pane had been broken, removed and the window opened, that the locked door between the store area and the storage area in the back had been forced and would no longer shut and that there was an indication that a vehicle had pulled up in the weeds outside the back of the building. Jones further testified that Melvin Decker of Midwest City was an associate in the business and that he had a key

to the building. He further identified 2 television sets that had been recovered as being 2 of the 3 stolen sets. On cross-examination he stated that he knew a Les Decker who was his associate's nephew but that to his knowledge he had never been in the store.

Noel Galloway then testified that during the time in question, he was a police officer in Meeker and that between 10:00 and 10:30 p.m. on the 18th he saw the defendant sitting in his car near the Jones store. The next morning he received a report of the break-in and while investigating noticed that a pane of glass from the back window was lying on a table inside the building. He further noted that the door in the partition wall between the store area and the storage area to the rear had been pried open and that car tracks had pushed down the weeds near the back of the building. On cross-examination he stated that it was not unusual to see the defendant in Meeker at 10:30 at night.

Lincoln County Deputy Sheriff Ted O'Donnell then testified that on the morning of the 19th he had occasion to investigate the break-in and observed that a pane of glass had been broken out of a window and the back window raised and that grass outside of the building had been trampled down. Smudged fingerprints were found on the window pane. At the time of the investigation he was advised that a 12-inch black and white Zenith television set with a swivel base and 2 19-inch Zenith color televisions had been stolen. On November 26, 1974, O'Donnell went to Shawnee in Pottawatomie County and served a bench warrant issued out of Lincoln County. O'Donnell was accompanied by two Shawnee officers and an officer from Chandler and went to defendant's apartment in Shawnee at approximately 11:30 p.m. When the defendant came to the door the officers went inside the apartment and served the warrant. While there O'Donnell observed a 12-inch television set on a swivel base resembling the one reportedly stolen in Meeker. The defendant was

then arrested on the bench warrant and taken to the Lincoln County jail. The next day O'Donnell returned to Shawnee and contained a search warrant. He then went to the defendant's apartment and found the 12-inch television set and a 19-inch television set that had been stolen from the Jones store. On cross-examination O'Donnell stated that he found no pry marks on the window or the outside door and that the door between the store and the storage area did not appear to be "jimmied." He further stated that the defendant was not a suspect at the time the bench warrant was served although he had been considered in the investigation.

Pottawatomie County Deputy Sheriff H. E. Cole, Jr., then testified that on September 27th he helped search the defendant's apartment pursuant to the warrant and then identified the television sets seized as a result of the search. Bill Sheets then related that he knew the defendant prior to the break-in and that at approximately 11:30 on the evening of the 18th he saw the defendant parked about 3 blocks from the Jones store and visited with him for a few moments. On cross-examination he stated that he had seen the defendant on numerous occasions in Meeker during the late evening hours. The state then rested.

The defendant, testifying in his own behalf, then related that he had two previous burglary convictions and was presently serving a sentence on a larceny conviction. He further stated that it was common for him and his friends to meet at Meeker late at night to visit and that Sheets' testimony was correct. He denied breaking into the store and stealing the television sets and stated that he bought the 19-inch set from Les Decker who lived in the apartment above his. He did not recall how he obtained possession of the 12-inch set. On cross-examination the defendant stated that on the evening the bench warrant was served a third television set was the only set visible to the officers. He further denied being parked in front of the Jones

store on the evening of the 18th. The defendant then rested.

The defendant's sole assignment of error urges that the trial court committed reversible error in overruling the defendant's motion to suppress prior to trial and in allowing into evidence the two television sets seized under a search warrant obtained after an illegal search incident to an arrest by bench warrant. In support of his contention the defendant urges that the bench warrant arrest was a mere subterfuge to gain entrance to the defendant's apartment in order to search same for the stolen television sets.

The defendant cites *Handley v. State,* Okl.Cr., 430 P.2d 830, wherein two state narcotic agents accompanied sheriff's deputies to arrest an accused on a warrant for second degree burglary and the narcotics agents found a cigarette package containing hypodermic syringes, needles, a spoon and an eyedropper in the water closet of a toilet and then proceeded to crawl under the house, allegedly to search the trap to determine if anything else had been flushed down the toilet, and discovered a fruit jar under the house containing morphine. We held that such a search was not a reasonable search incident to the arrest for burglary and that it appeared that the warrant of arrest for burglary was merely a subterfuge to gain entrance and search the premises without having to obtain a search warrant. We further held that if the narcotics agents wished to search the home they need only have procured a search warrant under proper procedure.

In the instant case there is no evidence that the bench warrant was issued merely as cover for the officers to gain entrance to the defendant's apartment. Officer O'Donnell testified that the 12-inch set was readily visible when he went in the door and served the bench warrant. He further stated that the set met the general description of a set taken from the Jones store and that the defendant, although not a suspect, had been considered in the investigation.

In *Fields v. State,* Okl.Cr., 511 P.2d 1116, we held that the existence or nonexistence of subterfuge in effecting an arrest of an accused is a matter which is not established by any one independent factor but is established by the evidence surrounding the arrest considered in its entirety. In the instant case the defendant does not attack the arrest warrant nor the search warrant but only argues that the officers used the bench warrant illegally to gain access and search without a warrant.

Based upon the facts outlined above we certainly must disagree. Officer O'Donnell was in a place he had a legal right to be and, after personally observing what he believed to be stolen property, he followed the proper procedure and obtained a search warrant. For us to hold otherwise would require an officer to ignore that which is in plain view. The defendant's sole assignment of error is without merit and the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.